UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHANTAL FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 1527 JMB |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the Court pursuant to the Social Security Act, 42 U.S.C. §§ 401, *et seq.* ("the Act"). The Act authorizes judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Chantal Ford's application for Disability Insurance Benefits and Supplemental Security Income. All matters are pending before the undersigned United States Magistrate Judge with consent of the parties, pursuant to 28 U.S.C. § 636(c). The matter is fully briefed, and for the reasons discussed below, the Commissioner's decision is affirmed.

### Procedural History & Summary of Memorandum Decision

On August 26, 2013, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Act. Plaintiff alleged a disability onset date of September 17, 2012. (Tr. 12)[2] Plaintiff's claims were denied initially on October 4,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, and pursuant to Fed. R. Civ. P. 25(d) Civil Procedure is substituted as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] "Tr." refers to the administrative record filed on behalf of the Commissioner.

2013.  (Id.)  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 3, 2015.  Plaintiff and Darrell Taylor, Ph.D., an independent Vocational Expert ("VE"), testified at the hearing.  (Tr. 29)  In a decision dated September 4, 2015, the ALJ denied benefits, concluding that Plaintiff was not disabled under the Act.  (Tr. 12-22)  The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner in this matter.  Plaintiff filed the instant action on September 27, 2016.  (ECF No. 1)  Accordingly, Plaintiff has exhausted her administrative remedies and the matter is properly before this Court.  Plaintiff has been represented throughout all relevant proceedings.

Although the ultimate issue before the Court is whether substantial evidence supports the Commissioner's decision, Plaintiff's request for judicial review asks the Court to consider two inter-related issues, namely:

(1)     Whether, in determining Plaintiff's Residual Functional Capacity ("RFC"), the ALJ erred in concluding that Plaintiff could perform sedentary work (with additional limitations) because no medical evidence supported the ALJ in this regard; and

(2)     Whether the hypothetical question posed to the VE was adequate because it failed to include a limitation that Plaintiff would miss four work days per month.

Both of these issues require the Court to address other related issues, including the ALJ's consideration of Plaintiff's credibility and the medical opinion evidence in the administrative record.

After a thorough review of the record, the Court concludes that the Commissioner's decision is supported by substantial evidence.  The ALJ gave good reasons for discounting Plaintiff's credibility.  Although the ALJ did not give significant weight to any of the medical opinions in the record, contrary to Plaintiff's contention, there is medical evidence in the record,

including medical source opinion evidence, to support a conclusion that Plaintiff is capable of sedentary work with the additional limitations noted.  Such evidence includes aspects of the opinion provided by Plaintiff's treating physician, Dr. Gayla Jackson, M.D.

## Administrative Record

### I.  General

Plaintiff was 31 years old at the time of her administrative hearing.  Prior to her alleged disability onset, Plaintiff worked in a variety of positions, including as a customer services representative, cashier, and casino security services.  (Tr. 20)  In her Disability Report – Adult, Plaintiff listed the following mental and physical conditions as limiting her ability to work: mental health; bipolar disorder; depression; anxiety; PTSD; obesity; high blood pressure; migraine headaches; sleep apnea; and asthma.  (Tr. 184)  In her Function Report – Adult, Plaintiff listed the following limitations to her ability to work:  lifting, squatting, bending, standing, walking, sitting, kneeling, talking, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others.[3]  (Tr. 223)

### II.  Summary Review of Medical Evidence

There is a great deal of medical evidence in the record.  The Court has considered the entire record and summarizes specific aspects herein to provide context for this memorandum and order.

#### A.  Dr. Melissa Hollie, M.D.

There are a few treatment records that predate Plaintiff's alleged disability onset date. Dr. Melissa Hollie apparently treated Plaintiff's hypertension, but noted that she was unsure whether Plaintiff had been compliant with her medications.  (Tr. 269-71)

---

[3] Plaintiff circled every limitation except reaching, using her hands, and hearing.

### B.    SSM DePaul Health Center

Plaintiff received treatment on numerous occasions, for a variety of reasons, from providers at SSM DePaul Health Center, including at the emergency room ("ER").  (See, e.g., Tr. 273-345, 678-90)  For example, in 2012, Plaintiff received treatment for migraine headaches, ear pain, a sore finger, a broken tooth, chest pain, abdominal pain, and coughing.  The medical records indicate that she typically received routine and conservative treatment for her conditions.  For example, in February 2013, Plaintiff was treated at the ER for chest pain.  The treatment notes indicate, among other things, that Plaintiff had a normal EKG.  She was given a prescription for pain and referred to her primary care provider.  (Tr. 311-16)  Similarly, on June 23, 2013, Plaintiff again appeared at the ER with chest pain, and again she had a normal EKG and was found to have no acute disease of the chest.  (Tr. 324-34)  In July 2, 2013, Plaintiff was treated at the ER for abdominal pain with vomiting.  The treatment notes reflect that all laboratory tests were "unremarkable."  (Tr. 335, 341)  Furthermore, the treatment notes for many if not most of her ER visits indicate that she had 100% oxygen saturation.

Additionally, a review of all of the treatment records from SSM DePaul Health Center show that the providers regularly found Plaintiff to be oriented, have a normal mood and affect, and intact memory and judgment.

### C.    Christian Hospital Northwest

Between 2012 and 2015, Plaintiff received treatment numerous times at Christian Hospital Northwest, including at the ER.  Plaintiff was treated for a variety of complaints, including chest pain, ear pain, dizziness, knee pain, a finger burn from Clorox, women's health issues, a hand injury due to punching a person, breathing issues related to asthma, nausea and stomach symptoms.  Despite her many trips to this facility, the record shows that Plaintiff typically received routine and conservative treatment and was not in acute distress, either

physically or mentally.  For example, in December 2012, Plaintiff appeared at the ER complaining of chest pain.  Plaintiff was oriented and did not appear to be in distress and did not meet the criteria for critical care.  Rather, she was advised to follow up with her primary care physician.  As another example, in August 2014, Plaintiff was treated at this facility after complaining of difficulty breathing.  She was diagnosed with asthma and tobacco abuse.  In April 2015, Plaintiff returned to this facility, complaining of chest pain, shortness of breath, numbness, and a headache.  Testing revealed no acute cardiopulmonary abnormalities.

### D.   Mercy Hospital / Mercy Clinic & Dr. Gayla Jackson, M.D.

The administrative record includes a large number of treatment notes from the Mercy Clinic and Dr. Gayla Jackson, M.D., from 2013 into 2015.  The records suggest that Dr. Jackson treated Plaintiff for a number of different conditions, including but not limited to, asthma, obstructive sleep apnea, morbid obesity, and women's health issues.  Plaintiff also reported to Dr. Jackson that she was attempting to conceive and have a child and received treatment from another provider, Dr. Marsha Fisher, related to fertility issues.  Plaintiff also received periodic treatment at the Mercy Hospital ER.

Dr. Jackson's treatment notes reflect problems controlling Plaintiff's various symptoms. For example, notes from May 2013 represent that Plaintiff's asthma was not well controlled and that she continued to suffer from morbid obesity.  The notes further indicate that Plaintiff suffered from occasional anxiety and was receiving multiple psychiatric-related medications. Dr. Jackson's notes regularly indicate that Plaintiff exhibited a normal mood and affect, and was well-oriented.

Dr. Jackson's notes, which span about two years, indicate that one of the substantial issues with Plaintiff's health care was controlling her asthma and hypertension.  This issue is generally consistent with Plaintiff's frequent visits to the ER.  Dr. Jackson's notes indicate,

however, that Plaintiff was non-compliant with her treatment and/or medications. Dr. Jackson regularly noted that Plaintiff continued to smoke cigarettes despite her conditions. Similarly, Plaintiff was not using her CPAP machine to assist with her obstructive sleep apnea, and was not compliant with other medications, including medications for blood pressure, migraines, and psychiatric issues. Dr. Jackson's notes also indicate that Plaintiff consumed a poor diet, at one time reporting that she subsisted largely on fast food. Dr. Jackson's notes often indicate that she spent more than 50% of her time with Plaintiff on counselling, including encouraging Plaintiff to modify her lifestyle.

On the whole, the treatment notes from Dr. Jackson and Mercy Clinic indicate that Plaintiff typically received routine and conservative treatment for her various ailments, and that Plaintiff was non-compliant with the course of treatment provided and recommended.

Dr. Jackson completed an Arthritis Residual Functional Capacity Questionnaire, dated May 14, 2015, which is one of the important pieces of opinion evidence in the record. (Tr. 987) Dr. Jackson indicated that she had treated Plaintiff every three months for the prior two years, and that Plaintiff had a diagnosis of arthritis. Of twenty-one positive objective signs for arthritis listed on the form, Dr. Jackson identified only "Crepitus" (grinding or popping sounds) of the knees as applying to Plaintiff. Dr. Jackson listed morbid obesity, asthma, and bipolar disorder as additional diagnosed impairments. Although the questionnaire identified twenty-four more generalized symptoms for consideration, Dr. Jackson marked only "breathlessness." Dr. Jackson indicated that Plaintiff was not a malingerer and that emotional factors did not contribute to the severity of Plaintiff's symptoms or functional limitations. Regarding pain, Dr. Jackson listed bilateral pain in Plaintiff's knees/ankles/feet, and that pain would frequently interfere with Plaintiff's attention and concentration. Dr. Jackson opined that Plaintiff could sit for more than two hours at a time (and at least six hours during an eight-hour workday), stand for fifteen

minutes before needing to sit down, stand/walk less than two hours during an eight hour workday, and that she would need to shift positions between sitting and standing/walking. Dr. Jackson further opined that Plaintiff would need unscheduled breaks hourly. Dr. Jackson also made specific findings regarding Plaintiff's ability to perform various work-related tasks such as carry weight, twist or bend, and reach. Finally, Dr. Jackson estimated that that Plaintiff would miss about four workdays per month due to her impairments or treatment requirements.

The ALJ's treatment of Dr. Jackson's opinion is discussed in greater detail below.

### E.   Dr. Jordan Balter, D.O.

The administrative record also includes numerous treatment notes from Dr. Jordan Balter. Dr. Balter was Plaintiff's treating psychiatrist from around 2012 until at least 2014. (See, e.g., Tr. 513-85) Many of Dr. Balter's notes are difficult to read. In a form dated September 16, 2013, responding to an inquiry for information relevant to Plaintiff's disability process, Dr. Balter noted that Plaintiff suffers from bipolar affective disorder and psychosis, and that she is unable to complete activities of daily living. (Tr. 513) Dr. Balter also completed a form entitled "Certification for Health Care Provider for FMLA Leave & Behavioral Health Provider Statement of Claim for Disability Benefits," dated April 17, 2013. (Tr. 666-70) In this form, Dr. Balter provided several opinions concerning Plaintiff's mental and emotional health, but estimated that Plaintiff might recover sufficiently to work by late May 2013.

### F.   Dr. George Vergolias, Psy.D.

Among the medical opinions in the record are three related opinions from Dr. George Vergolias, the last of which was dated September 11, 2013. (Tr. 644-52) Dr. Vergolias was not a treating source, but reviewed records and information, including from Dr. Balter and Plaintiff. Dr. Vergolias concluded that Plaintiff suffered from a functionally impairing psychological condition—bipolar disorder. Dr. Vergolias noted that Plaintiff's functional impairments would

result in decreased abilities in the following areas: sustaining cognitive focus; multitasking without errors; problem solving fluidly and without frustration; appropriately interacting with customers/co-workers; and accomplishing tasks within demanding timelines. (Tr. 649) Dr. Vergolias estimated that such limitations would last approximately eight weeks, and recommended alternative treatment options to improve Plaintiff's symptoms. (Id.) Finally, Dr. Vergolias indicated that he believed the evidence showed Plaintiff had been compliant with her treatment. (Tr. 651)

### G. Debra Villar, Licensed Mental Health Case Manager

The record also includes a "Medical Claim Plan," dated August 27, 2013, and signed by Debra Villar, Mental Health Case Manager, which includes Plaintiff's answers to a questionnaire for mental health claims to "Standard Insurance Company." (Tr. 653-55)

### H. Dr. James Flax, M.D.

The administrative record includes a Physician's Consult Memo, dated April 30, 2014, from Dr. James Flax, M.D. The memo appears to be directed to a claim associated with Plaintiff's long-term disability carrier. The memo also indicates that Dr. Flax was not an examining source. Rather, Dr. Flax reviewed the information from Dr. Vergolias, Dr. Balter, Mental Health Counselor Debra Villar, and Mercy Clinic.

### I. Dr. Marsha Toll, Psy.D.

Dr. Marsha Toll completed a psychiatric review technique and provided a Mental Residual Functional Capacity assessment in the Disability Determination Explanations associated with Plaintiff's DIB and SSI applications. (See, e.g., Tr. 63-65, 68-69) The records provided to Dr. Toll included records from Dr. Balter in September 2013. Among other things, Dr. Toll found Plaintiff to have mild limitations regarding her activities of daily living and maintaining social functioning, and moderate limitations regarding concentration, persistence, or

pace. (Tr. 63)  The specific functional limitations found by Dr. Toll are identified in greater detail in the Court's analysis below.

## III.  Administrative Hearing

On June 3, 2015, the ALJ conducted a hearing on Plaintiff's disability applications.  (Tr. 28-58)  Plaintiff, who appeared with counsel, testified in response to questions posed by the ALJ. Plaintiff was 31 years old at the time of the hearing.  Among other things, Plaintiff testified that her daily activities consisted of lying in bed, watching television, taking medications, and attending doctor's appointments.  Plaintiff noted that she both slept a lot but had been up all night and could not sleep.  Plaintiff discussed her medications and some of her functional limitations, and that she had arthritis throughout her body.  At the time of her hearing, Plaintiff was no longer receiving psychiatric care from a mental health specialist because Dr. Balter died.

Plaintiff recounted her employment history in some detail, including her reasons for leaving various positions.  Plaintiff's past employment included working as a cashier, a collections representative, a shift manager at a gas station, a variety customer service representative positions, a van driver for "Call-A-Ride," and a casino security officer.  In some instances, Plaintiff left her job due to her physical or mental conditions, in other cases she left for non-health reasons such as low pay or because the business shut down.

Plaintiff testified that she graduated from high school and had "just graduated from Job Corps, … Retail Sales Program."  (Tr. 53)

Dr. Darrell Taylor, an impartial Vocational Expert ("VE"), testified in response to questions posed by the ALJ.  The ALJ asked the VE a series of five hypothetical questions.  Each question built upon the prior question.  The third hypothetical question asked the VE to consider a hypothetical worker, with the same background as Plaintiff, who retained the ability to:  lift and carry up to 10 pounds occasionally and lift or carry less than 10 pounds frequently; stand or walk

for 2 hours out of an 8-hour day; sit for 6 hours of an 8-hour day; standing and walking would be limited to no more than 15 to 20 minutes at a time; never work with dust, odors, fumes, and pulmonary irritants; and limited to performing simple routine tasks involving only simple work-related decisions.  (Tr. 54-56)  This third hypothetical question corresponds to the RFC that the ALJ included in his decision denying benefits.

The VE found that a person having the limitations outlined in the third hypothetical could not return to Plaintiff's past relevant work, but could perform other jobs that exist in substantial numbers in the national and Missouri economy, including hand packer and production worker assembler.  (Tr. 57)

The fourth hypothetical added a limitation that the hypothetical worker could only occasionally stoop, crouch, squat, and climb ladders or stairs.  (Tr. 57).  This additional limitation did not alter the VE's opinion that such a person could work as a hand packer or production worker.  (Id.)

The fifth and final hypothetical added a limitation that the worker would miss about four days of work each month.  The VE concluded that such an individual would be terminated for absenteeism.  (Id.)

## IV.    **ALJ's Decision**

This is an SSI and DIB case.  Plaintiff alleged a disability onset date of September 17, 2012.  Based on Plaintiff's past earnings history, the ALJ determined that Plaintiff met the insured status through December 31, 2017.  (Tr. 12, 14)

In assessing whether Plaintiff was disabled, the ALJ followed the required five-step process laid out in the Commissioner's regulations.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her alleged onset of disability.  (Tr. 14)  At step two, the ALJ found that Plaintiff had the following severe impairments:  "asthma, obesity,

migraine headaches, bipolar affective disorder, and post-traumatic stress disorder." (Id.) The ALJ concluded that Plaintiff's hypertension, hyperlipidemia, and arthritis were non-severe.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or equaled a listed impairment.[4] The ALJ considered Listing 3.03A regarding Plaintiff's asthma, and Listings 12.04 and 12.06, regarding Plaintiff's mental health-related impairments. (Tr. 15) Regarding mental health, the ALJ assessed the "paragraph B" requirements finding that: (1) Plaintiff had mild restrictions in her activities of daily living; (2) mild restrictions in social functioning; (3) moderate restrictions in concentration, persistence or pace; and (4) no episodes of decompensation for an extended duration. (Tr. 15-16)

Prior to steps four and five, the ALJ concluded that Plaintiff had the RFC to –

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never be exposed to dust, odors, fumes, or pulmonary irritants; she would require a job that limited her to standing and/or walking to 15 minutes at a time, but she would otherwise remain on task at her work station; and she would be limited to simple, routine, repetitive, tasks, and making simple work-related decisions.

(Tr. 16)

In making this RFC determination, the ALJ also made an adverse determination regarding Plaintiff's credibility. In particular, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] partially credible." (Tr. 17)

As a result of his RFC determination, and with the assistance of testimony from the VE, the ALJ concluded that Plaintiff could not perform the duties of her past relevant work. (Tr. 20)

At step five, the ALJ relied on the VE's testimony to support a conclusion that there existed sufficient jobs in the national economy that Plaintiff could still perform, such as a hand

---

[4] The ALJ's findings at steps two and three have not been challenged herein.

packager or assembler. (Tr. 21) Accordingly, the ALJ found that Plaintiff was not disabled under the Act. (Tr. 25)

**Analysis**

## I.     Issues Presented for Review

Plaintiff raises two issues for review. Both issues ultimately involve the RFC found by the ALJ. First, Plaintiff contends that the ALJ cited no medical evidence to support a finding that she was capable of sedentary work. Plaintiff argues that, because the ALJ discounted every medical opinion in the record, no medical evidence supports the RFC. Plaintiff further contends that the ALJ did not offer a legally sufficient rationale for discounting the opinion of Dr. Jackson, her treating physician. Second, and relatedly, Plaintiff argues that the hypothetical question posed to the VE was insufficient because it did not include a limitation that Plaintiff would miss four days of work per month due to her impairments. The Commissioner has filed a brief in opposition, refuting Plaintiff's allegations of error.

As explained below, substantial evidence supports the ALJ's assessment of the opinion evidence in general, and Dr. Jackson's opinion in particular. Further, substantial evidence supports the RFC ultimately determined by the ALJ and reflected in the hypothetical question posed to the VE.

## II.     Standard of Review and Analytical Framework

To be eligible for SSI and DIB benefits, a claimant must prove that she is disabled within the meaning of the Act. See Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B). See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During this process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Reece v. Colvin, 834

F.3d 904, 908 (8th Cir. 2016); <u>Wildman v. Astrue</u>, 964 F.3d 959, 965 (8th Cir. 2010).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision."  <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district court must "also take into account whatever in the record fairly detracts from that decision."  Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1.  The credibility findings made by the ALJ.

2.  The claimant's vocational factors.

3.  The medical evidence from treating and consulting physicians.

4.  The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5.  Any corroboration by third parties of the claimant's impairments.

6.  The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

<u>Stewart v. Sec'y of Health & Human Servs.</u>, 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  <u>Buckner v. Astrue</u>, 646 F.3d 549, 556 (8th Cir. 2011).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. <u>Id.</u>; <u>see</u> <u>also</u> <u>Chaney v. Colvin</u>, 812 F.3d 672, 676 (8th Cir. 2016); <u>McNamara v. Astrue</u>, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

**III.    <u>Analysis of Issues Presented</u>**

**A.     Credibility**

The Court first addresses the ALJ's adverse credibility determination, as that decision impacted the RFC the ALJ assigned to Plaintiff.  See Wildman, 596 F.3d at 969 (explaining that an "ALJ's determination regarding [a claimant's] RFC was influenced by [the ALJ's] determination that [claimant's] allegations were not credible") (citation omitted).  In this case, Plaintiff does not squarely challenge the ALJ's adverse credibility determination.  Instead, Plaintiff addresses one aspect of the ALJ's credibility analysis—Plaintiff's minimal daily activities—and then combines that with the larger issue of whether Plaintiff is capable of sedentary work.  (See Brief in Support of Complaint at p. 13, 14)[5]

The ALJ's decision to discount Plaintiff's credibility does not depend entirely or even substantially on Plaintiff's activities of daily living.  Rather, a review of the ALJ's decision demonstrates that he gave multiple valid and good reasons for his decision in this regard.

_____

[5] For example, at page 13 of her brief Plaintiff argues –

> The decision fails to articulate a legally sufficient rationale as to how the minimal activities of daily living that are cited, reasonably lead to the conclusion someone would be capable of engaging in sedentary work activity 8 hours a day, 5 days week.  The decision's recitation as to plaintiff's minimal daily activities do not amount to activity which would take 8 hours.  Therefore, absent a legally sufficient rationale, the decision has failed under the standards contained in Polaski to articulate a legally sufficient rationale for its conclusions these minimal activities amount to a significant inconsistency.

Similarly, at page 14 Plaintiff argues –

> Plaintiff, therefore, respectfully submits the findings of residual functional capacity failed to articulate "some" medical evidence to support the findings of residual functional capacity, as required under the standards contained in Singh and Lauer. The decision's analysis of credibility is lacking, as it fails to articulate a legally sufficient rationale relative to how those minimal activities reasonably lead to the conclusion plaintiff would be capable of sedentary work activity. Finally, the decision's recitation plaintiff's noncompliance and diet somehow renders her testimony inconsistent, also fails due to the decision's lack of an adequate legal rationale.

"An ALJ has a 'statutory duty' to 'assess the credibility of the claimant,' and thus, 'an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances.'" Crawford v. Colvin, 809 F.3d 404, 410 (8th Cir. 2015) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589-90 (8th Cir. 2004)). The Eighth Circuit has instructed that, in the course of making an RFC determination, the ALJ is to consider the credibility of a plaintiff's subjective complaints in light of the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). See also 20 C.F.R. §§ 404.1529, 416.929. The Polaski factors include:

> (i) claimant's daily activities; (ii) the duration, frequency, and intensity of claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions.

Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016) (citing Polaski, 739 F.2d at 1322; 20 C.F.R. § 416.929(c)).

An ALJ is not required to discuss each Polaski factor and how it relates to a plaintiff's credibility. See Partee v. Astrue, 638 F.3d at 860, 865 (8th Cir. 2011) (stating that "[t]he ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting a [plaintiff's] subjective complaints") (internal quotation and citation omitted); Samons v. Astrue, 497 F.3d 813, 820 (8th Cir. 2007) (stating that "we have not required the ALJ's decision to include a discussion of how every Polaski factor relates to the [plaintiff's] credibility").

This Court reviews the ALJ's credibility determination with deference and may not substitute its own judgment for that of the ALJ. "The ALJ is in a better position to evaluate credibility, and therefore we defer to [the ALJ's] determinations as they are supported by sufficient reasons and substantial evidence on the record as a whole." Andrews, 791 F.3d at 929

(citing <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006)).  <u>See</u> <u>also</u> <u>Julin</u>, 826 F.3d at 1086

(explaining that "[c]redibility determinations are the province of the ALJ" and the deference

federal courts owe to such determinations); <u>Gregg v. Barnhart</u>, 354 F.3d 710, 713 (8th Cir. 2003)

(holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons

for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination").

In this case, despite Plaintiff's arguments to the contrary, the ALJ gave good reasons for

discounting Plaintiff's credibility.  Accordingly, the Court will defer to the ALJ in this regard.

In discounting Plaintiff's credibility, the ALJ considered a host of facts and

circumstances supported by the record.  The ALJ first noted that, although Plaintiff claims total

disability, she previously applied for disability, was turned down, and thereafter returned to work

and continued working until her employer closed the facility.  <u>See</u> <u>Medihaug v. Astrue</u>, 578 F.3d

816-17 (8th Cir. 2009) (leaving work for reasons other than disability).  The ALJ also correctly

noted that Plaintiff had overstated the intensity of her symptoms, even to medical providers.  For

example, she routinely sought care at emergency room facilities but typically received non-

severe diagnoses with routine and conservative treatment.  <u>See</u> <u>Milam v. Colvin</u>, 794 F.3d 978,

985 (8th Cir. 2015); <u>cf.</u> <u>Buford v. Colvin</u>, 824 F.3d 793, 797 (8th Cir. 2016); <u>Lawson v. Colvin</u>,

807 F.3d 962, 965 (8th Cir. 2015).

The ALJ also noted that plaintiff had a significant history of non-compliance with her

treatment recommendations.  The record in this case is filled with instances of such non-

compliance.  Plaintiff's non-compliance is noticeably extensive in that it is not isolated in terms

of time, lifestyle, or specific treatment.  For example, despite her sleep apnea, bouts of

sometimes severe asthma, and breathing issues, Plaintiff continued to smoke and did not use her

CPAP machine.  The record also includes several instances in which she was non-compliant with

her medications, including her psychiatric medications, as well as exercise and diet requirements.

See Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001) (claimant's failure to follow prescribed course of treatment may be weighed against credibility in assessing subjective complaints); Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (same); Crawford v. Colvin, 809 F.3d 404, 411 (8th Cir. 2015) (continued tobacco, alcohol and drug use);

Furthermore, the ALJ correctly noted that Plaintiff's testimony conflicted with the medical evidence, including evidence from her primary care physician, Dr. Jackson. Plaintiff represented that she had arthritis throughout her body, yet Dr. Jackson's MSS listed only one arthritic symptom—crepitus—and only in Plaintiff's knees. The ALJ made additional, specific findings regarding Plaintiff's credibility concerning the symptoms concerning her headaches and mental health issues.

Finally, the ALJ concluded that the record demonstrated that Plaintiff functioned reasonably well (and sometimes improved) despite the fact that she was often non-compliant with her treatment. The record also showed that, although she claims an inability to perform even sedentary work, she was attempting to become pregnant.

In summary, the ALJ gave numerous good reasons for discounting Plaintiff's subjective complaints. Thus, the ALJ's decision in this regard will not be disturbed. See Julin, 826 F.3d at 1086 (noting the deference due to an ALJ's credibility determination); Gregg, 354 F.3d at 713.

To the extent Plaintiff's arguments directly or implicitly challenge the validity of the ALJ's credibility analysis, such a challenge cannot be sustained.

### B. RFC and Opinion Evidence

Plaintiff contends that the ALJ's determination of her RFC is not supported by any medical evidence. Plaintiff's arguments focus primarily on the ALJ's determination that she

retained the RFC to perform sedentary work (albeit with additional limitations).[6]  The heart of

Plaintiff's argument appears to be that, because the ALJ discounted every medical opinion in the

record, no medical evidence remains to supports the RFC.  (See Brief in Support of Complaint at

p. 10)

> The Eighth Circuit has explained that
>
> [a claimant's] RFC "is the most [he] can still do despite [his] limitations."  20
> C.F.R. § 404.1545(a)(1).  Although it is the ALJ's responsibility to determine the
> claimant's RFC, 20 C.F.R. §§ 404.1545(a); 404.1546(c), the burden is on the
> claimant to establish his or her RFC.  Andrews v. Colvin, 791 F.3d 923, 928 (8th
> Cir. 2015).  The RFC determination must be supported by some medical
> evidence.  Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013).

Buford v. Colvin, 824 F.3d 793, 796 (8th Cir. 2016).  See also Martise v. Astrue, 641 F.3d 909,

923 (8th Cir. 2011).  "'Because a claimant's RFC is a medical question, an ALJ's assessment of

it must be supported by some medical evidence of the claimant's ability to function in the

workplace….  Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering

medical evidence exclusively.'"  Harvey v. Colvin, 839 F.3d 714, 717 (8th Cir. 2016) (quoting

Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)).

Plaintiff's arguments suggest that the ALJ must have erred in assessing her RFC because

the ALJ discounted and did not rely on any of the source opinions.  First, as a legal matter,

Plaintiff's argument is incorrect.  In determining a claimant's RFC, an "'ALJ is not required to

rely entirely on a particular physician's opinion or choose between the opinions [of] any of the

claimant's physicians.'"  Martise, 641 F.3d at 923 (quoting Schmidt v. Astrue, 496 F.3d 833, 845

(7th Cir. 2007)).[7]

---

[6] See Brief in Support of Complaint at p. 9 ("The decision of the Administrative Law
Judge cites absolutely no medical evidence for its conclusions regarding plaintiff's ability to
perform sedentary work.").

[7] To the extent Plaintiff contends that the ALJ erred in not accepting any source's opinion

Plaintiff is also wrong factually—the ALJ may have discounted aspects of every opinion, but the ALJ relied on other aspects of several opinions. For example, the ALJ did not completely discount Dr. Jackson's opinion. Rather, the ALJ gave partial weight to Dr. Jackson's opinion, and discounted those aspects which were not supported by the longitudinal record as a whole. (Tr. 19) Similarly, the ALJ gave partial weight to the opinions of Drs. Balter and Toll.

Starting with Dr. Jackson, she completed an arthritis residual function questionnaire, which is relevant to the question of whether Plaintiff is capable of sedentary work. Dr. Jackson treated Plaintiff for years and her opinion listed only one positive, objective sign in support of Plaintiff's arthritis diagnosis—crepitus. Dr. Jackson listed other impairments as morbid obesity, asthma, and bipolar disorder, and listed Plaintiff's prognosis as "fair." Dr. Jackson noted that Plaintiff experienced breathlessness and bilateral pain in her knees/ankles/feet, but did not indicate that Plaintiff experienced pain elsewhere. Dr. Jackson opined that Plaintiff's pain would frequently interfere with her attention and concentration, but also that no emotional or psychological conditions affected her pain. Dr. Jackson opined that Plaintiff could sit for more than two hours and at least six hours each day, and could stand could stand for 15 minutes at a time and less than two hours total each workday. Dr. Jackson noted that Plaintiff did not need to walk around during the workday, would not need a cane or assistive device, but would need to shift between sitting and standing. Dr. Jackson further opined that Plaintiff would require unscheduled breaks frequently throughout the day, and would miss four days per month. Finally, Dr. Jackson noted that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, could twist occasionally but rarely stoop or climb stairs, could never crouch or

that Plaintiff was disabled (see, e.g., Brief in Support of Complaint at p. 15), the law is clear. An ALJ may give no deference to a source's conclusion that a claimant is disabled because such opinions are reserved to the Commissioner. See Perkins v. Astrue, 648 F.3d 892, 898 (8th Cir. 2011) (citation omitted).

climb ladders, had no limitations with her ability to look and turn her head in all directions, and could use her hands without restrictions.

By and large, Dr. Jackson's opinion is unremarkable and consistent with the ALJ's RFC in material respects, and particularly with respect to sedentary work.[8] Further, Plaintiff's arguments ignore the significance of limiting Plaintiff to sedentary work. The Eighth Circuit has explained that limiting a claimant to sedentary work is, by itself, a significant limitation. See Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). In this case, the ALJ added further limitations that specifically accounted for Plaintiff's breathing issues and mental health limitations.

As for the limitations in Dr. Jackson's RFC Questionnaire that the ALJ did not accept,[9] the ALJ's decision was consistent with controlling case law. "[T]he Commissioner's regulations … provide that a treating physician's opinion is given controlling weight if, and only if, it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" Johnson v. Astrue, 628 F.3d 991, 994 (8th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). An ALJ can discount a treating physician's opinion if, for example, that opinion is based on subjective complaints, more than objective medical evidence. See Reece v. Colvin, 834 F.3d 904, 909 (8th Cir. 2016) (citing Cline v.

---

[8] Per 20 C.F.R. § 404.1567(a) –

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[9] The ALJ rejected Dr. Jackson's opinions that Plaintiff would require numerous unscheduled breaks and miss four days per month because those limitations were not included in his RFC and would have eliminated meaningful employment.

Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014); see also Vance v. Berryhill, 860 F.3d 1114 (8th

Cir. 2017) (affirming ALJ decision even where the source's opinion was based only partially on

the claimant's subjective complaints). An ALJ need not give controlling weight to a treating

physician's opinion where there is an absence of clinical findings to support the opinion, or if the

opinion is vague, conclusory, or in an unexplained checklist format. See Boyd v. Colvin, 831

F.3d 1015, 1021 (8th Cir. 2016) (citing cases); McCoy v. Astrue, 648 F.3d 605 (8th Cir. 2011);

Johnson v. Astrue, 628 F.3d 991, 994 (8th Cir. 2011); Wildman v. Astrue, 596 F.3d 959, 964

(8th Cir. 2010).

        Dr. Jackson's opinion is provided mostly in a conclusory, check-list format. With

specific regard to Dr. Jackson's representation that Plaintiff would miss about four days each

month and require frequent, unscheduled breaks, the opinion lacks any support and Plaintiff's

brief does not point to any specific, objective clinical findings or diagnostic evidence that would

support Dr. Jackson's opinion. To the extent Dr. Jackson's opinion rests on Plaintiff's subjective

complaints, the ALJ was justified in discounting the opinion.

        Put simply, the administrative record, when considered as a whole, supports a conclusion

that Plaintiff is capable of work at the sedentary level. The fact that the record might also

support a contrary conclusion is not a basis for reversing the ALJ's decision in this case. See

Reece, 834 F.3d at 908; McNamara, 590 F.3d at 610. Further, the fact that the ALJ did not parse

out each item of evidence to support his RFC reflects,[10] in this case, little more than an arguable

defect in opinion writing, which is excused as harmless because it has no bearing on the outcome

of this matter. See Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008); see also Vance v.

_____

        [10] Again, Plaintiff focuses a substantial portion of her argument on whether she is capable
of sedentary work. Most of Dr. Jackson's opinion, as well as her treatment notes, both of which
the ALJ referenced, lead to a conclusion that Plaintiff is capable of work at the sedentary
exertion level.

Berryhill, 860 F.3d 1114 (8th Cir. 2017).

The ALJ also gave partial weight to the opinion of Plaintiff's treating psychiatrist, Dr. Balter. From the record, it appears that Dr. Balter provided his opinion in connection with a disability claim to UnitedHealth Group. (Tr. 665) Dr. Balter's opinion is dated April 17, 2013. The ALJ discounted Dr. Balter's opinion because, inter alia, Plaintiff was not compliant with her medications, had not been forthcoming with her providers regarding her non-compliance with her CPAP use, and because other records showed more normal examinations. These are all valid reasons for discounting a treating physician's opinions and are supported by the record in this case. See Chaney, 812 F.3d at 679; Davidson v. Astrue, 501 F.3d 987, 990-92 (8th Cir. 2007). Additionally, Dr. Balter's opinion itself suggested that the limitations outlined therein were not permanent. Dr. Balter estimated that Plaintiff would be able to return to work in just over thirty days after the date of his opinion. (Tr. 670).

The ALJ gave partial weight to the opinion evidence from Dr. Marsha Toll, Psy.D. Dr. Toll completed a psychiatric review technique and provided a Mental Residual Functional Capacity assessment in the Disability Determination Explanations associated with Plaintiff's DIB and SSI applications. Dr. Toll's findings are largely consistent with the ALJ's findings at step three, and did not include any limitations that would be more restrictive than those included in the RFC outlined by the ALJ.[11] In her brief, Plaintiff does not identify any aspect of Dr.

---

[11] Dr. Toll found Plaintiff to be not significantly limited in her abilities to: (1) carry out very short and simple instructions; (2) perform activities within a schedule and maintain regular attendance within customary tolerances; (3) sustain an ordinary routine without special supervision; (4) work with others without being distracted; (5) make simple work-related decisions; (6) complete a normal workday and work week without interruptions due to psychologically based symptoms; (7) and perform at a consistent pace without an unreasonable number and length breaks. Dr. Toll found Plaintiff to be moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods, but that Plaintiff retained the concentration and persistence capabilities to carry out 1-2 step instructions.

Toll's findings that the ALJ should have, but did not, include in Plaintiff's RFC.

The ALJ gave little weight to the opinions of consulting psychologist, Dr. George Vergolias.[12] Dr. Vergolias reviewed various documents and records, including Dr. Balter's records. Dr. Vergolias interviewed Plaintiff by phone. Dr. Vergolias described a variety of limitations regarding Plaintiff's ability to perform competitively in a work environment. Dr. Vergolias prepared his opinion under the mistaken belief that Plaintiff was compliant with her treatment plans. (Tr. 651) The ALJ discounted Dr. Vergolias's opinion precisely because of Plaintiff's non-compliance issues. Again, this is a valid reason to discount the opinion of a non-treating source.

The ALJ also gave little weight to the opinion of Dr. James Flax, MD, a non-examining consulting physician/psychiatry source who provided a "Physician Consult Memo," dated April 30, 2014. The ALJ discounted Dr. Flax's opinion because it was from a non-examining source and given to a long-term disability carrier, and because Dr. Flax was not aware of Plaintiff's non-compliance issues. These are proper reasons to discount an opinion and Plaintiff's brief does not appear to take issue with the ALJ's treatment of this opinion.

In sum, the ALJ gave valid reasons, supported by the record, for giving only partial weight to the opinions of Drs. Jackson, Balter, and Toll, and giving little weight to the opinions of Drs. Flax, and Vergolias. Contrary to Plaintiff's arguments, medical evidence, including aspects of the opinions of Drs. Jackson, Balter, and Toll, supports the RFC found by the ALJ in this case. The ALJ's decision adequately and fairly discharges his duty of resolving the various opinions. See Finch, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving

---

[12] Dr. Vergolias provided three opinions to UnitedHealth Group relative to Plaintiff's long-term disability claim. The Court will focus its discussion on last opinion in the record, which is dated September 11, 2013. (Tr. 644-52)

conflicts among medical opinions.").

Plaintiff's first point of error cannot be sustained.

### C.      Hypothetical Question to VE

Plaintiff also argues that the hypothetical question posed to the VE at her administrative hearing was insufficient. Plaintiff contends that a sufficient question would have included a limitation that Plaintiff would likely miss four days of work per month. As noted above, the source of this additional limitation is Dr. Jackson's opinion. Having concluded that the ALJ did not err in weighing the opinion evidence, and that substantial evidence supports the ALJ's RFC determination, Plaintiff's second point of error cannot be sustained.

The third hypothetical posed to the VE corresponded to the ALJ found by the ALJ.[13] Thus, the ALJ was justified in relying on the VE's opinion that Plaintiff was not disabled and that there exists sufficient jobs in the national and local economy which Plaintiff retains the RFC to perform. See Perkins v. Astrue, 648 F.3d 892, 901-02 (8th Cir. 2011) ("A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true.") (internal quotations omitted); see also Scott v. Berryhill, 855 F.3d 853 (8th Cir. 2017).

### Conclusion

For the foregoing reasons, Plaintiff's contention that the ALJ erred in formulating her RFC cannot be sustained. The ALJ's decision regarding Plaintiff's RFC is supported by substantial evidence, and because that decision falls within the reasonable "zone of choice," it

---

[13] The fourth hypothetical added limitations generally consistent with Plaintiff's allegations of arthritis, namely limitations concerning stooping, crouching, squatting, and climbing. Although the ALJ did not include those limitations in the RFC he ultimately found, the VE concluded that a person with such limitations could still find work in the Missouri and national economy. Thus, although Plaintiff does not take specific issue with the ALJ's step two finding that her arthritis is non-severe, it would likely not have changed the outcome of this case had the ALJ included limitations relative to Plaintiff's arthritis.

will not be disturbed.  See Buckner, 646 F.3d at 556.

Accordingly,

**IT IS HEREBY ORDERED** that, the decision of the Commissioner is **AFFIRMED**.  A

separate Judgment shall be entered this day.

 /s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
United States Magistrate Judge

Dated this  16th  day of   August  , 2017.